# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTOPHER WALTER, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FRIENDLY'S ICE CREAM, LLC; FORT WASHINGTON PA 693 LLC; FRIENDLY'S RESTAURANT – NORRISTOWN, PA (#897), LLC; KHALED KEZBARI; and DOE DEFENDANTS 1-10,<br><br>Defendant. | Civil Action No.: 2:17-cv-0178-ER<br><br>**AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Christopher Walter ("Walter" or "Plaintiff"), on behalf of himself and all others similarly situated, alleges as follows:

## INTRODUCTION

1.      This is class and collective action brought on behalf of "Tipped Employees" (defined below) who work or have worked at certain restaurants operating under the trade name of "Friendly's."

2.      Friendly's is a tradename for the restaurants that are either corporate-owned or franchises offered by Friendly's Ice Cream, LLC ("Friendly's LLC").  Two such franchises are Fort Washington PA 693 LLC ("Fort Washington") and Friendly's Restaurant – Norristown, PA (#897), LLC ("Norristown").  Both are owned and/or operated by Defendant Khaled Kezbari (together, the "Subject Friendly's Restaurants").

3.      Upon information and belief, the Subject Friendly's Restaurants operate under policies and procedures, including compensation policies/procedures, approved and disseminated by Friendly's LLC.

4.      The Subject Friendly's Restaurants employ individuals as "servers" ("waiters" and "waitresses") and "runners" (collectively, "Tipped Employees"), who are and/or were subjected to Defendants' unlawful pay practices.

5.      As explained in detail below, Defendants systematically and willfully violated the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.*, ("FLSA" or the "Act") and the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. § 333.101, *et seq.*, by failing to satisfy the notice requirements of the tip credit provisions of the FLSA and PMWA.

6.      Due to Defendants' unlawful failure to properly inform Tipped Employees of its intention to utilize a "tip credit", Defendants have improperly applied a "tip credit" against the wages paid to Plaintiff and current and former Tipped Employees, thus paying them less than the mandated minimum wage.

7.      As a result of the aforementioned pay practices, Plaintiff and the members of the Classes (defined below) were illegally under-compensated for their work.

## JOINT EMPLOYMENT ALLEGATIONS

8.      Throughout the relevant period, Defendants acted in a joint venture or as joint employers.  Collectively, Defendants formulated, approved, controlled and engaged in the improper practices described in this Amended Complaint and, thus, are jointly responsible for these practices.

9.      Throughout the relevant period, Defendants have been an integrated enterprise with inter-related operations, systems, policies, practices and labor relations.

10.     Upon information and belief, Defendant Friendly's LLC is actively engaged in the day-to-day operation and management of business operations at all of its Friendly's restaurants, including the Subject Friendly's Restaurants.

11.     All Friendly's restaurants receive active, ongoing support from Friendly's LLC, including: (a) quality assurance visits; (b) marketing and advertising services; (c) menu development; (d) point-of-sale materials; (e) signage; and (f) banners and public relations announcements.

12.     Indeed, the Company states that "A Friendly's opening team will be sent to assist the franchisee with the opening and initial operation of the restaurant." *See* https://www.friendlys.com/business/franchising/#step-3. (last visited March 10, 2017).

13.     Upon information and belief, the assistance and oversight of the Company as it pertains to franchise locations, including the Subject Friendly's Restaurants, encompasses the hiring and training of Tipped Employees.

14.     Evidencing this fact, on the Company's website regarding a server application for a franchise location, it states that servers "[m]ust participate in company orientation and training." *See* http://jobs.friendlys.com/jobsearch/job-details/server-franchise/250211/ (last visited August 2, 2016).

15.     Managers and staff in all Friendly's restaurants, including the Subject Friendly's Restaurants, receive common training, developed and overseen by the Company, with respect to all aspects of the restaurant's operations.

16.     Upon information and belief, the training provided by the Company includes establishing the working conditions of all employees, such as setting the rate of pay for Tipped Employees at all Friendly's restaurants, including the Subject Friendly's Restaurants.

17.     Throughout the relevant period, because of its active, ongoing role in the business operations of all Friendly's restaurants, the Company is a joint employer of all Plaintiff and all

Tipped Employees as defined by the FLSA, PMWA and WPCL, and is jointly responsible for the improper acts and practices described in this Complaint.

<u>**SUMMARY OF CLAIMS**</u>

18.     Plaintiff brings this action as a collective action to recover unpaid wages, pursuant to the FLSA.

19.     In particular, Plaintiff brings this suit on behalf of the following similarly situated persons:

> All current and former Tipped Employees who have worked for Defendants in the Commonwealth of Pennsylvania at one or more of the Subject Friendly's Restaurants within the statutory period covered by this Complaint, and elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 216(b) ("Collective Class").

20.     In addition, Plaintiff also brings this action as a state-wide class action to recover unpaid wages, and failing to pay the applicable minimum wage, pursuant to the PMWA.

21.     Specifically, Plaintiff brings this suit on behalf of a class of similarly situated persons composed of:

> All current and former Tipped Employees who have worked for Defendants in the Commonwealth of Pennsylvania at one or more of the Subject Friendly's Restaurants during the statutory period covered by this Complaint (the "PA Class").

22.     The Collective Class and the PA Class are hereafter collectively referred to as the "Classes."

23.     Plaintiff alleges on behalf of the Collective Class that they are: (i) entitled to unpaid minimum wages from Defendants for hours worked for which Defendants failed to comply with the notice provisions of the tip credit and pay the mandatory minimum wage, as required by law and (ii) entitled to liquidated damages pursuant to the FLSA.

24.     Plaintiff alleges on behalf of the PA Class that Defendants violated the PMWA by failing to comply with the tip credit provisions, as required by law, consequently failing to pay them the appropriate minimum wages for all hours worked.

## PARTIES

25.     Plaintiff Christopher Walter ("Plaintiff") is a resident of the Commonwealth of Pennsylvania who was employed by Defendants as a "server" in their Fort Washington and East Norriton locations in the Commonwealth of Pennsylvania.   While employed as a server, Defendants failed to compensate Plaintiff properly for all hours worked.

26.     Pursuant to Section 216(b) of the FLSA, Plaintiff has consented in writing to be a plaintiff in this action.   (*See* Dckt. No. 1, Ex. A).

27.     Defendant Friendly's Ice Cream, LLC (the "Company" or "Defendant Friendly's LLC"), headquartered in Wilbraham, Massachusetts, owns and operates a string of full-service restaurants located across the United States.   In addition, the Company also offers franchise opportunities, including multiple locations in Pennsylvania.

28.     The Company maintains the website "www.friendlys.com."   As detailed further above, Friendly's is responsible, both directly and jointly, for the operation of all Friendly's restaurants, and for the policies, practices, and conduct at issue in this case.   At all relevant times during the statutory period covered by this Complaint, Defendant has transacted business within the Commonwealth of Pennsylvania, including within this district.

29.     Defendant Fort Washington PA 693 LLC ("Defendant FW Friendly's" or "Fort Washington") is a franchisee of the Company that operates the restaurant operating under the "Friendly's" trade name at 325 Pennsylvania Avenue, Fort Washington, Pennsylvania.

30.     As set forth more fully below, Defendant FW Friendly's paid Plaintiff for a portion of the Class Period.  As such, Defendant FW Friendly's has transacted business within the Commonwealth of Pennsylvania, including within this district, during the statutory period covered by this Complaint.

31.     Defendant Friendly's Restaurant – Norristown, PA (#897), LLC ("Defendant Norristown Friendly's" or "Norristown") is a franchisee of the Company that operates the restaurant operating under the "Friendly's" trade name at 150 W. Germantown Pike, East Norriton, Pennsylvania.

32.     As set forth more fully below, Defendant Norristown Friendly's paid Plaintiff for a portion of the Class Period.  As such, Defendant Norristown Friendly's has transacted business within the Commonwealth of Pennsylvania, including within this district, during the statutory period covered by this Complaint.

33.     Defendant FW Friendly's and Defendant Norristown Friendly's share common ownership and control.  Indeed, a review of health inspection reports during the applicable statutory period reveals that both Defendant FW Friendly's and Defendant Norristown Friendly's are both owned by Defendant Khaled Kezbari.

34.     Defendant Khaled Kezbari ("Kezbari") is a natural person residing in the State of New Jersey.  In certain health inspection reports for both Defendant FW Friendly's and Defendant Norristown Friendly's, Defendant Kezbari is identified as the corporate entities "Owner."  *See*  http://webapp02.montcopa.org/health/Inspections/default.asp, last visited on January 3, 2017.

35.     In these corporate capacities, upon information and belief, Defendant Kezbari exercises sufficient control over the labor policies and practices complained of herein to be

considered the employer of Plaintiff and the Classes for the purposes of the FLSA and PA State Laws.

36.     Together Defendants Friendly's LLC, Defendant FW Friendly's, Defendant Norristown Friendly's, and Defendant Khaled Kezbari are employers of Tipped Employees and are responsible for the employment practices complained of herein.

37.     Upon information and belief, Defendants are a single and joint employer with a high degree of interrelated and unified operations, sharing common officers with a common address.   Further, each of these Defendants share the common labor policies and practices complained of herein.

38.     Plaintiff is unaware of the names and the capacities of those defendants sued as DOES 1 through 10 but will seek leave to amend this Complaint once their identities become known to Plaintiff. Upon information and belief, Plaintiff alleges that at all relevant times each defendant was the officer, director, employee, agent, representative, alter ego, or co-conspirator of each of the Defendant.   In engaging in the alleged conduct herein, defendants acted in the course, scope of, and in furtherance of the aforementioned relationship.   Accordingly, unless otherwise specified herein, Plaintiff will refer to all defendants collectively as "Defendants" and each allegation pertains to each of the defendants.

## JURISDICTION AND VENUE

39.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201 *et seq*.

40.     Further, this Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims derive from a common nucleus of operative facts.

41.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(ii) as a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district, and Defendants are subject to personal jurisdiction in this district.

42.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## FACTUAL ALLEGATIONS

43.     The crux of the FLSA and PA State Laws is, *inter alia*, that all employees are entitled to be paid mandated minimum wages for all hours worked.

44.     Contrary to these basic protections, Plaintiff and the members of the Classes were deprived of the mandated minimum wage for all hours they worked.

45.     Plaintiff and the members of the Classes are, or were, Tipped Employees employed by Defendants.

46.     According to the Company's website, there are at least 24 restaurants operating under the Friendly's brand in the Commonwealth of Pennsylvania. *See* http://www.friendlys.com/locate/ (last visited August 2, 2016).

47.     The Fort Washington and Norristown locations are two of these locations.

48.     Upon information and belief, the Subject Friendly's Restaurants are/were operated under uniform policies/procedures applicable to all members of the Classes.

**Plaintiff's Experience Working For Defendants**

49.     As set forth above, Plaintiff was employed by Defendants as a "server" at the Subject Friendly's Restaurants.

50.     Plaintiff worked at the Fort Washington location from in or about June 2015 through February 2016.

51.     Prior to his employment at the Fort Washington location, Plaintiff worked at the Norristown location from May 2014 through December 2014.

52.     Plaintiff was paid an hourly cash wage rate from Defendants and earned tips from customers, who chose to leave him a gratuity.

53.     Plaintiff's hourly wage rate from Defendants was $2.83.  Plaintiff does not ever recall his hourly wage being raised above $2.83 for any day he worked for Defendants, irrespective of how little tips he earned.

54.     Unless he worked a double shift, Plaintiff's typical shift lasted approximately six (6) to seven (7) hours. If Plaintiff worked a double shift, his typical shift time was approximately thirteen (13) hours.

55.     Plaintiff typically worked anywhere from four (4) to six (6) shifts per week and worked, on average, approximately thirty (30) to thirty-five (35) hours or more per week.

56.     Occasionally (typically once or twice per month), Plaintiff would work in excess of forty (40) hours in a given work week.

57.     To minimize the amount of overtime he recorded, Defendants would have Plaintiff work "off-the-clock" ("OTC work").  Such OTC work included having Plaintiff work as the host when he worked on weekends and thus not clock in until the scheduled host arrived and the restaurant was sufficiently busy for him to begin waiting on tables.

58.     In addition, Plaintiff would also perform closing duties through OTC work as the manager would clock him and the other servers out so that the manager could finalize and tally the receipts for the day while the servers performed their end of shift break down work (*e.g.*, cleaning and restocking the restaurant for the following day).

59.     Plaintiff was not paid or credited for this OTC work.  Accordingly, when this OTC work is added to his weekly hours, Plaintiff regularly worked hours in excess of 40 in a workweek, for which he did not receive time and half pay at his regular rate.

60.     Plaintiff also recalls spending a significant amount of his shift (in excess of 20%) performing non-tip generating work.  This work included cleaning tables after a dining party left, stocking supplies and toiletries, and ensuring that all condiments were filled.

61.     Although Plaintiff worked at two different Friendly's restaurants, Plaintiff does not recall any material differences between:  (a) the way the Defendant FW Friendly's and Defendant Norristown Friendly's operated; or (b) his work experiences at the two locations.

**The Tip Credit Provision & Requirements**

***FLSA Requirements***

62.     Rather than pay its Tipped Employees the applicable minimum wage (either the applicable state minimum wage or the federal minimum wage, whichever is higher), Defendants chose to take a tip credit and pay these employees less than the applicable minimum wage.

63.     Under applicable law, in certain circumstances, it is permissible for an employer to take a tip credit and pay its employees less than the mandated minimum wage, provided that the employee's tips received from customers plus the tip credit wage paid by the employer equals at least the applicable minimum wage.[1]

64.     According to the Department of Labor's ("DOL") Fact Sheet #15: Tipped Employees Under the Fair Labor Standards Act (FLSA) ("Fact Sheet #15"):

---

[1] An employer is not relieved of their duty to pay an employee wages at least equal to the minimum wage by virtue of taking a tip credit or by virtue of the employee receiving tips from customers in an amount in excess of the applicable minimum wage.  That is, an employer in the restaurant industry must pay the employee wages at least equal to the minimum wage or equal to the minimum wage less the tip credit, provided the tips claimed exceed the tip credit.  Under no circumstances is the employer relieved of paying at least the minimum wage for all hours worked, regardless of how much an employee earns in tips.

the maximum tip credit that an employer can currently claim under the FLSA is $5.12 per hour (the minimum wage of $7.25 minus the minimum required cash wage of $2.13).

65.     As is made plain in Fact Sheet #15, in order to claim a tip credit, the employer must comply with five strict notification requirements.

66.     First, the employer must notify the employee of the amount of the cash wage the employer is paying the Tipped Employee and that amount must equal at least $2.13 per hour.

67.     Second, the employer must notify the Tipped Employee of the amount the employer is claiming as a tip credit.  In accordance with the FLSA, the tip credit claimed cannot exceed $5.13 per hour.

68.     Third, the employer must inform the Tipped Employee that the tip credit claimed cannot exceed the actual amount of tips received by the employee.  In effect, the employer must inform the employee that the employee must still earn the mandated minimum of $7.25 per hour between the amount of the tip credit taken by the employer and the amount of tips earned by the employee.

69.     Fourth, the employer must notify the Tipped Employee that all tips received are to be retained by the employee except for a valid tip pooling arrangement.

70.     Finally, the Tipped Employee must be informed by the employer that the tip credit will not apply unless the employee has been informed of these provisions.

71.     An employer bears the burden of showing that it has satisfied all of the notification requirements before any tips can be credited against the employee's hourly wage.[2]  If an employer cannot demonstrate its compliance with this notification requirement, no credit can be taken and the employer is liable for the full minimum wage.

---

[2] Courts have strictly construed this notification requirement.  Accordingly, some courts have held that a generic governmental poster (which is required by the DOL) does not satisfy the tip credit notification requirement.

72.     Further, where a tipped employee earns less in tips than the tip credit claimed, the employer is required to make up the difference.  Stated another way, if a tipped employee earns less than $5.12 per hour in tips (the maximum tip credit permissible where the employer pays the employee $2.13 per hour), the employer must raise that tipped employee's hourly cash component the necessary amount above $2.13 per hour so as to ensure that the employee earns at least $7.25 per hour – the mandated minimum wage.

73.     As set forth herein, Defendants failed to comply with certain of the FLSA's provisions regarding the claiming of a tip credit.

***Pennsylvania's Requirements***

74.     Pennsylvania state law has a substantially similar requirement to the FLSA's tip notification requirements.  *See* 43 P.S. § 333.103(d).

75.     Importantly, however, Pennsylvania mandates a higher minimum cash wage and requires employers to pay at least $2.83 per hour.  Thus, under Pennsylvania law, the maximum tip credit is $4.42 per hour.[3]

76.     As such, an employer cannot be said to have complied with Pennsylvania's tip credit notification requirements where the employer simply relies on Department of Labor mandated posters as said posters do not explicitly identify the tip credit amount in Pennsylvania (as it differs from the FLSA tip credit amount).

77.     In addition, 34 Pa. Code § 231.34 also requires employers to maintain payroll records that contain the following information:

> (a)   A symbol or letter placed on the pay records identifying each employee
>
> whose wage is determined in part by tips;

---

[3] Like the FLSA, Pennsylvania law states that the tip credit claimed by the employer cannot exceed the amount of tips actually received by the employee.  *See* 43 P.S. § 333.103(d).

(b)  Weekly or monthly amount reported by the employee, to the employer, of tips received. This may consist of reports made by the employees to the employer on IRS Form 4070;

(c)  Amount by which the wages of each tipped employee have been deemed to be increased by tips, as determined by the employer, not in excess of 45% of the applicable statutory minimum wage until January 1, 1980 and thereafter 40% of the applicable statutory minimum wage;

(d)  Amount per hour which the employer takes as a tip credit shall be reported to the employee in writing each time it is changed from the amount per hour taken in the preceding week;

(e)  Hours worked each workday in any occupation in which the tipped employee does not receive tips and total daily or weekly straight-time payment made by the employer for such hours; and

(f)  Hours worked each workday in occupations in which the employee received tips and total daily or weekly straight-time earnings for the hours.

**Defendants' Failure to Notify Tipped Employees**

78.     As explained above, the DOL has very specific requirements regarding what an employer must notify his/her employee of if that employer intends to claim a tip credit.

79.     Rather than comply with the notification requirements set forth in Fact Sheet #15, Defendants chose to simply pay its Tipped Employees $2.83 per hour.  In short, Defendants failed to inform its Tipped Employees of (a) their intention to take the tip credit, and (b) the amount Defendants intended to claim as a tip credit.

80.     The Third Circuit and district courts across the country have held that where an employer fails to satisfy any one of the notification requirements, that employer forfeits the tip credit and must pay the employee the full minimum wage.

81.     Indeed, Plaintiff does not ever recall being notified by Defendants that they intended to take a "tip credit," nor how much that amount would be.  Evincing the magnitude of Defendants' abject failure to notify Tipped Employees of their intention to take a tip credit, until recently, Plaintiff never heard the term "tip credit."

82.     Defendants also failed to comply with 43 P.S. 231.34 insofar as they failed to notify employees in writing whenever the tip credit claimed by Defendants changed.  Rather, Defendants took the maximum tip credit permissible irrespective of whether its Tipped Employee actually earned sufficient tips to substantiate the tip credit claimed.

83.     Defendants also failed to comply with 43 P.S. 231.34 insofar as they failed to notify employees in writing of the hours worked where the Tipped Employee did not receive tips.  Rather, Defendants took the maximum tip credit permissible for every hour worked by its Tipped Employees, including Plaintiff, irrespective of whether its Tipped Employee (i) actually earned sufficient tips to substantiate the tip credit claimed or (ii) whether the employee was engaged in tip generating work.

**Additional Evidence of Defendants' Failure To Comply With The Tip Credit Provisions**

84.     Due to Defendants' requiring Plaintiff and other Tipped Employees to perform OTC work (including, for example, clocking Tipped Employees out but requiring them to continue working), Defendants cannot claim any tip credit as they did not pay their employees at least $2.83 for every hour worked.

85.     Further, Defendants also required Tipped Employees to perform non-tip generating work.  Such work included stocking the salad area, stocking and cleaning the "rail area" (the area where dressings and condiments were kept), stocking toiletries, cleaning the booths, making coffee, bussing tables after a party left.  This non-tip generating work comprised a substantial portion of the Tipped Employees' shift.

86.     For example, Plaintiff estimates that he spent anywhere from 90 to 105 minutes of a 7-hour shift doing opening prep work, closing break down work, and running side work.  Stated another way, Plaintiff spent, on average, 21-25% of his shift performing non-tip generating work.

87.     As Fact Sheet #15 makes clear, "where a tipped employee spends a substantial amount of time (in excess of 20 percent in the workweek) performing" non-tip generating work, "no tip credit may be taken for the time spent in such duties."

88.     Further evidencing Defendants' requirement that Tipped Employees perform non-tip generating work without appropriate compensation, on three occasions, Defendants required Plaintiff and other Tipped Employees to clean and disinfect the Fort Washington location when a sewer line broke.

89.     At no time did Defendants have Plaintiff or other Tipped Employees clock in under a different code or pay these individuals the full minimum wage, instead electing to continue to pay them the minimum cash wage and continuing to claim the tip credit despite the fact that these employees could not earn tips during this time.

90.     In addition, on certain nights, Defendants would claim more in tips than Plaintiff actually earned from customers.  Thus, Defendants did not accurately record the tips earned by Plaintiff and other Tipped Employees.

91.     Finally, Defendants required Tipped Employees to cover customer walk-outs, cash shortages, and replacement uniform pieces (such as check holders).  To pay for these items, Tipped Employees are required to forfeit a portion of their tips to cover these costs.

92.     Plaintiff recalls instances where other Tipped Employees would complain that management would require them to pay for a walkout and/or a cash shortage.

## CLASS & COLLECTIVE ACTION ALLEGATIONS

93.     Plaintiff brings this action on behalf of the Collective Class as a collective action pursuant to Sections 207 and 216(b) of the FLSA.  Plaintiff also brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the PA Class for claims under the PA State Laws.

94.     The claims under the FLSA may be pursued by those who opt-in to this case pursuant to 29 U.S.C. §216(b).  The claims brought pursuant to the PA State Laws may be pursued by all similarly-situated persons who do not opt-out of the PA Class pursuant to Fed.R.Civ.P. 23.

95.     Upon information and belief, the members of each of the Classes are so numerous that joinder of all members is impracticable.  While the exact number of the members of these Classes is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes there are over 30 individuals in each of the Classes.

96.     Defendants have acted or have refused to act on grounds generally applicable to the Classes, thereby making final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole, appropriate.

97.     The claims of Plaintiff are typical of the claims of the Classes he seeks to represent.  Plaintiff and the members of the Classes work or have worked for Defendants and were subject to the same compensation policies and practices.

98.     Common questions of law and fact exist as to the Classes that predominate over any questions only affecting them individually and include, but are not limited to, the following:

> (a)     whether Defendants have failed to pay the full minimum wage for each hour worked;
>
> (b)     whether Defendants satisfied each of the requirements in order to claim a tip credit against each hour worked;
>
> (c)     whether Defendants were precluded from claiming the tip credit during the period encompassed by this Complaint; and
>
> (d)     whether Plaintiff and members of the Classes are entitled to compensatory damages, and if so, the means of measuring such damages.

99.     Plaintiff will fairly and adequately protect the interests of the Classes as his interests are aligned with those of the members of the Classes.  Plaintiff has no interests adverse to the Classes she seeks to represent, and has retained competent and experienced counsel.

100.     The class action/collective action mechanism is superior to other available methods for a fair and efficient adjudication of the controversy.  The damages suffered by individual members of the Classes may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the Classes to individually seek redress for the wrongs done to them.

101.     Plaintiff and the Classes he seeks to represent have suffered and will continue to suffer irreparable damage from the illegal policy, practice and custom regarding Defendants' pay practices.

102.     Defendants have violated and, continue to violate, the FLSA.

103.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a) and willful violation of the PMWA.

**FIRST CLAIM FOR RELIEF**
**FAIR LABOR STANDARDS ACT MINIMUM WAGE VIOLATIONS**
**(On Behalf of the Collective Class)**

104.    Plaintiff, on behalf of himself and the Collective Class, realleges and incorporates by reference the paragraphs above as if they were set forth again herein.

105.    At all relevant times, Defendants have had gross revenues in excess of $500,000.

106.    At all relevant times, Defendants have been and continue to be, an employer engaged in interstate commerce, within the meaning of the FLSA.

107.    At all relevant times, Defendants have employed, and/or continue to employ, Plaintiff and each of the Collective Class Members within the meaning of the FLSA.

108.    Pursuant to Defendants' compensation policies, rather than pay Tipped Employees the federally-mandated minimum wage, Defendants took a tip credit and paid Tipped Employees only the tip-credit wage.

109.    Defendants have violated and, continue to violate, the FLSA.

110.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

111.    Due to Defendants' FLSA violations, Plaintiff, on behalf of himself and the members of the Collective Class, are entitled to recover from the Defendants, compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

**SECOND CLAIM FOR RELIEF**
**FAIR LABOR STANDARDS ACT OVERTIME WAGE VIOLATIONS**
**(On Behalf of the Collective Class)**

112.    Plaintiff, on behalf of himself and the Collective Class, realleges and incorporates by reference the paragraphs above as if they were set forth again herein.

113.    At all relevant times, Defendants have had gross revenues in excess of $500,000.

114.    At all relevant times, Defendants have been and continue to be, an employer engaged in interstate commerce, within the meaning of the FLSA.

115.    At all relevant times, Defendants have employed, and/or continue to employ, Plaintiff and each of the Collective Class Members within the meaning of the FLSA.

116.    At relevant times in the period encompassed by this Complaint, Defendants have a willful policy and practice of refusing to pay premium overtime compensation for all hours worked in excess of 40 hours per workweek.

117.    Defendants have violated and, continue to violate, the FLSA.  The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

118.    Due to Defendants' FLSA violations, Plaintiff, on behalf of himself and the members of the Collective Class, are entitled to recover from the Defendants, compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

**THIRD CLAIM FOR RELIEF**
**PENNSYLVANIA MINIMUM WAGE ACT– MINIMUM WAGE VIOLATIONS**
**(On Behalf of the PA Class)**

119.    Plaintiff, on behalf of himself and the members of the PA Class, realleges and incorporates by reference the paragraphs above as if they were set forth again herein.

120.    At all relevant times, Defendants have employed, and/or continue to employ, Plaintiff and each of the PA Class Members within the meaning of the PMWA.

121.    Pursuant to Defendants' compensation policies, rather than pay Tipped Employees the Pennsylvania mandated minimum wage, Defendants improperly took a tip credit and paid Tipped Employees at a rate well below the Pennsylvania minimum wage.

122.    Pursuant to Defendants' compensation policies, rather than pay Tipped Employees the required minimum wage in Pennsylvania, Defendants took a tip credit and paid Tipped Employees only the tip-credit wage.

123.    At relevant times in the period encompassed by this Complaint, Defendants had a willful policy and practice of failing to satisfy the notification requirements in order for Defendants to claim the tip credit.

124.    As a result of Defendants' willful practices, Defendants were not entitled to claim the tip credit and pay Plaintiff and the members of the PA Class less than the Pennsylvania minimum wage for all hours worked.

125.    Defendants have violated and, continue to violate, the PMWA.

126.    Due to the Defendants' violations, Plaintiff, on behalf of himself and the members of the PA Class, are entitled to recover from Defendants the amount of unpaid minimum wages, attorneys' fees and costs.

**FOURTH CLAIM FOR RELIEF**
**PENNSYLVANIA MINIMUM WAGE ACT– OVERTIME WAGE VIOLATIONS**
**(On Behalf of the PA Class)**

127.    Plaintiff, on behalf of himself and the members of the PA Class, realleges and incorporates by reference the paragraphs above as if they were set forth again herein.

128.    At all relevant times, Defendants have employed, and/or continue to employ, Plaintiff and each of the PA Class Members within the meaning of the PMWA.

129.    At relevant times in the period encompassed by this Complaint, Defendants had a willful policy and practice of refusing to pay premium overtime compensation for all hours worked in excess of 40 hours per workweek.

130.    Pursuant to Defendants' policies and procedures, Plaintiff and the members of the PA Class were paid $2.83 per hour irrespective of whether a Tipped Employee worked in excess of forty hours in a particular week.

131.    This did not compensate Tipped Employees premium overtime compensation in an amount at least equal to one and one-half times their regular rate for all hours worked in excess of forty in a workweek.

132.    Defendants have violated and, continue to violate, the PMWA.

133.    Due to the Defendants' violations, Plaintiff, on behalf of himself and the members of the PA Class, are entitled to recover from Defendants the amount of unpaid overtime wages, attorneys' fees and costs.

## FIFTH CLAIM FOR RELIEF
## PENNSYLVANIA WAGE PAYMENT COLLECTION LAW
### (On Behalf of the PA Class)

134.    Plaintiff, on behalf of himself and the members of the PA Class, realleges and incorporates by reference the paragraphs above as if they were set forth again herein.

135.    At all relevant times, Defendants have employed, and/or continue to employ, Plaintiff and each of the PA Class Members within the meaning of the WPCL.

136.    Pursuant to the WPCL Plaintiff and the members of the PA Class were entitled to receive all compensation due and owing to them on their regular payday.

137.    As a result of Defendants' unlawful policies, Plaintiff and the members of the PA Class have been deprived of compensation due and owing.

138.    Further, due to Defendants' policy of deducting amounts from the tips of Plaintiff and the PA Class to offset business losses/expenses, Plaintiff and the PA Class were subject to improper deductions from their compensation.

139.    Plaintiff, on behalf of himself and the members of the PA Class, are entitled to recover from Defendants the amount of unpaid compensation, and an additional amount of 25% of the unpaid compensation as liquidated damages.

## SIXTH CLAIM FOR RELIEF
## PENNSYLVANIA COMMON LAW – UNJUST ENRICHMENT
### (On Behalf of the PA Class)

140.    Plaintiff, on behalf of himself and the PA Class Members, realleges and incorporates by reference the paragraphs above as if they were set forth again herein.

141.    Plaintiff and the members of the PA Class were employed by Defendants within the meaning of the PA State Laws.

142.    At all relevant times, Defendants had a willful policy and practice of denying Tipped Employees their full share of gratuities.

143.    During the class period covered by this Complaint, Plaintiff and Tipped Employees were subjected to unlawful deductions from their gratuities.

144.    Defendants retained the benefits of its unlawful deductions from the gratuities from Plaintiff and Tipped Employees under circumstances which rendered it inequitable and unjust for Defendants to retain such benefits.

145.    Defendants were unjustly enriched by subjecting Plaintiff and Tipped Employees to such unlawful deductions.

146.     As direct and proximate result of Defendants' unjust enrichment, Plaintiff and the members of the PA Class have suffered injury and are entitled to reimbursement, restitution and disgorgement from Defendants of the benefits conferred by Plaintiff and the PA Class.

Plaintiff, on behalf of himself and the members of the PA Class, are entitled to reimbursement, restitution and disgorgement of monies received by Defendants.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and/or on behalf of himself and all other similarly situated members of the Collective Class and members of the PA Class respectfully requests the Court grant the following relief:

A.     Designation of this action as a collective action on behalf of the Collective Class, and prompt issuance of notice pursuant to 29 U.S.C. §216(b), apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. §216(b);

B.     Designation of the action as a class action under F.R.C.P. 23 on behalf of the PA Class;

C.     Designation of Plaintiff as representative of the Collective Class and the PA Class;

D.     Designation of Plaintiff's counsel as class counsel for the Collective Class and the PA Class;

E.     A declaratory judgment that the practices complained of herein are unlawful under the FLSA and PMWA;

F.     An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with it, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

G.      An award of unpaid minimum wages to Plaintiff and the members of the Classes;

H.      An award of unpaid overtime wages to Plaintiff and the members of the Classes;

I.      An award of liquidated damages to Plaintiff and members of the Classes;

J.      An award of costs and expenses of this action together with reasonable attorneys'
and expert fees to Plaintiff and members of the Classes; and

K.      Such other and further relief as this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands
a trial by jury on all questions of fact raised by the complaint.

Dated: March 13, 2017                          Respectfully submitted,

                                               **CONNOLLY WELLS & GRAY, LLP**


                                               By:  */s/ Gerald D. Wells, III*
                                                    Gerald D. Wells, III
                                                    Robert J. Gray
                                                    2200 Renaissance Blvd., Suite 275
                                                    King of Prussia, PA 19406
                                                    Telephone: 610-822-3700
                                                    Facsimile: 610-822-3800
                                                    Email: gwells@cwg-law.com
                                                    rgray@cwg-law.com


                                               **KALIKHMAN & RAYZ, LLC**
                                               Eric Rayz
                                               1051 County Line Road, Suite "A"
                                               Huntingdon Valley, PA 19006
                                               E-mail:  erayz@kalraylaw.com


                                               *Attorneys for the Plaintiff and the*
                                               *Proposed Classes*